# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Christopher Pruette and Steven Pruette, trading as InSearch Partners

Plaintiffs

vs.

Egan-Jones Ratings Company

Defendants

Civil No. ____________________

JURY TRIAL DEMANDED

## COMPLAINT

1. Plaintiffs, Christopher Pruette and Steven Pruette (the "Plaintiffs"), trading as InSearch Partners ("ISP"), by and through their undersigned attorneys, hereby submit this Complaint against Egan-Jones Ratings Company ("EJR," also referred to as the "Defendant").

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332(a)(1). All Plaintiffs are citizens of different states from the state of citizenship of the Defendant, and the amount in controversy, exclusive of costs and interest, exceeds $75,000.

3. Christopher Pruette is a Michigan citizen, residing at 1829 Stoneridge Drive, Saline, MI 48176

4. Steven Pruette is a Michigan citizen, residing at 5688 Glen Oak Court, Saline, MI 48176

5. ISP is an independent, unincorporated sales company owned equally by Steven Pruette and Christopher Pruette. It previously maintained offices at 135 East Bennett #8, Saline, MI 48176. When it was active, its principal place of business was in Michigan.

6. EJR is a corporation incorporated in Pennsylvania in 1997, with its current principal office address at 61 Station Rd., Haverford, PA 19041.

7. On or about December 20, 1998, ISP entered into an agreement with EJR, a copy of which is attached as Exhibit A to this Complaint (the "1998 Agreement"). That Agreement provides that ISP would act as exclusive distributor of Egan-Jones Ratings Services produced by EJR, and would be compensated for sales of such ratings services in accordance with a commission structure set forth in that Agreement. The Agreement also provides that, so long as certain thresholds of sales volumes were met, the Agreement would continue for an indefinite term, subject to cancellation by either side on ninety days' written notice.

8. In or about January 2003 (the 2003 Agreement), Plaintiffs entered into a second agreement with Defendant EJR. That agreement was oral. It covered sales of Egan Jones Proxy Services. It provided that the terms of the 1998 Agreement apply to sales of Egan Jones Proxy Services, *mutatis mutandis*. In other words, it provided that ISP would act as exclusive distributor of Egan Jones Proxy Services produced by EJR; that ISP would be compensated for sales of such proxy services in accordance with

the commission structure set forth in the 1998 Agreement; and that the 2003 Agreement would continue for an indefinite term, subject to cancellation by either side on ninety days' written notice.

9. Both the 1998 Agreement and the 2003 Agreement provided that ISP would be credited with, and earn commissions upon, future renewals by existing customers of their subscriptions to the respective services, if the original sales had been effectuated through the efforts of ISP.

10. In contrast to the 1998 Agreement, neither Plaintiffs nor Defendants executed a written arbitration agreement in connection with the 2003 Agreement.

11. ISP has well and faithfully executed its responsibilities under the 2003 Agreement.

12. EJR faithfully paid ISP commissions earned by ISP under the 2003 Agreement, including commissions earned upon customer renewals, from the inception of the 2003 Agreement until a point in or after September 2014.

13. In the latter part of September 2014, EJR ceased making full payments of commissions to ISP earned under the terms of the 2003 Agreement.

14. In or about January 2015, EJR commenced refusing to pay amounts due to ISP or amounts subsequently becoming due.

15. ISP continued to sell Egan Jones proxy services until a point in early 2015, when EJR deprived ISP of access to the EJR website, and thereby made Plaintiffs' continued sales of Proxy Services impossible.

16. EJR refused Plaintiffs' numerous demands that commission payments be resumed, and that access to the EJR website be restored, pursuant to the terms of the 2003 Agreement.

17. Plaintiffs are entitled to all reasonably foreseeable damages causally related to Defendant EJR's breaches of the 2003 Agreement.

18. Plaintiffs have incurred compensable damages in an amount to be determined, but not less than $575,000.00, plus pre-judgment interest in accordance with law. The amounts due to Plaintiffs include (a) approximately $40,000 in unpaid commissions, which had become due upon payments by customers for sales of proxy services by ISP, received by EJR prior to the frustration of performance of the 2003 Agreement by EJR in early 2015; (b) approximately $35,000 in unpaid commissions which had become due upon payments by customers for renewals of previous subscriptions for proxy services, received by EJR prior to the frustration of performance of the 2003 Agreement by EJR in early 2015; (c) approximately $254,000 for commissions due upon payment to EJR by customers for renewals of proxy services, received by EJR subsequent to the frustration of performance of the 2003 Agreement in early 2015, but prior to the date of

the filing of this Complaint; and (d) the present value of reasonably anticipated payments by customers for future renewals of proxy services.

19. The 1998 Agreement, as made applicable by the parties' agreement to the 2003 Agreement, includes the following language:

> THE COSTS AND EXPENSES OF THE ARBITRATION SHALL BE BORNE BY THE NON-PREVAILING PARTY OR PARTIES.

The agreement that the terms of the 2003 Agreement would track the terms of the 1998 Agreement, *mutatis mutandis*, necessarily made this sentence into a provision allowing the prevailing party in a litigation to recover its costs and expenses. Accordingly, Plaintiffs demand repayment by EJR of reasonable attorney's fees, taxable court costs, the disbursements of their counsel, and all other costs and expenses of this suit.

**COUNT I – DAMAGES FOR BREACH OF CONTRACT**

20. The foregoing averments are realleged and incorporated herein by reference.

21. Plaintiffs demand damages for defendant's breach of contract including at least the following: (a) unpaid commissions for sales in 2014 and 2015; (b) unpaid commissions for renewals in 2014; (c) unpaid commissions for renewals from January 1, 2015 until the time Plaintiffs' cause is tried; (d) the present value of unpaid commissions on renewals subsequent to the time Plaintiff's cause is tried.

## COUNT II – DECLARATORY JUDGMENT

22. The foregoing averments are realleged and incorporated herein by reference.

23. Plaintiffs request declaratory judgment of their entitlement to commissions for all customer renewals after defendant terminated the contract in 2015, without limitation as to time.

## JURY DEMAND

24. Plaintiffs demand a trial by jury as to all matters triable to a jury.

WHEREFORE, Plaintiffs demand judgment against defendant EJR for all damages flowing from its breaches, in an amount to be proven, but not less than $575,000; (2) injunctive relief against the continuation of the breach of the 2003 Agreement by EJR; (3) a declaration that the parties remain bound by the terms of the 2003 Agreement for all customer renewals, and that commissions are due and owing to Plaintiffs, and (4) a post-verdict molding of the verdict to include (a) pre-judgment interest on the amount determined to be due, retrospectively from the dates when individual payments were due, (b) statutory post-judgment interest until the date of payment of the judgment, and (c) costs and expenses as provided by law and contract, including reasonable attorney's fees; and (5) any further remedy or relief which this Court might deem just and equitable under applicable Pennsylvania law.

Dated: August 31, 2018

Respectfully submitted,

BRUCE J. CHASAN (Pa. I.D. 29227)
Law Offices of Bruce J. Chasan LLC
1500 JFK Boulevard, Suite 312
Philadelphia, PA 19102
215-567-4400
bjchasan@brucechasanlaw.com

*Attorneys for Plaintiffs*
*Christopher Pruette and*
*Steven Pruette*
*Trading as InSearch Partners*

Of Counsel (expecting to apply for *Pro Hac Vice* admission):

WILLIAM R. BRONNER
Attorney at Law
294 Vanderbilt Avenue
Brooklyn, NY 11205
718-789 6763

Exhibit "A"

Copy
Original deal
1998

# LETTER OF AGREEMENT

The purpose of this letter is to codify an oral Agreement between Sean J. Egan, Egan-Jones Ratings Company (EJR), Steven Pruette, Christopher Pruette, and Inscarch Partners (IP); whereby IP would sell the Egan-Jones Ratings Service for research on corporate debt issues and issuers (Service) to investment professionals, and to resellers, and others.

1. Service Ownership

EJR shall retain its right, title and interest in and to the Service and nothing in this agreement shall cause right title or interest to inure to IP.

2. Independent Contractor

IP shall at all times act as an independent contractor in the transaction of its business and shall conduct its activities in accordance with the rules and regulations of the Securities and Exchange Commission (SEC) and the long standing recognized practices of the industry, where applicable. Nothing contained in this Agreement shall be construed to create a joint venture, partnership or employer/employee relationship between EJR and IP. IP in its capacity as independent contractor will use its best efforts to market and sell subscriptions to the Service. IP will be free to exercise its judgement as to the time, place and manner of the actual marketing and sales.

2. Sole Agent

IP shall be the sole agent authorized to sell the Service to the professional investment community and to receive a percentage of the invoice price during the term of this agreement and its renewal periods. EJR agrees to notify IP of inquiries that it receives unsolicited from the professional investment community. EJR must quote only the cash or commission prices on the attached Exhibit I to anyone who inquires about the Service. EJR however retains the right to solicit and sell to clients outside the professional investment community. The professional investment community is defined, for the purposes of this agreement to mean all entities which manage as a fiduciary or as an agent, the investments of others, or who advise others in the management of their investments. Examples of these entities include but are not limited to mutual fund managers, hedge fund managers, managers of private investment partnerships, independent investment managers, registered investment advisors, bank trust departments, bank owner investment subsidiaries, insurance companies and insurance company owned investment management subsidiaries, self administered pension funds of corporations, financial planners, investment banks and investment brokerage firms and their subsidiary investment management firms, venture capital firms, leveraged buyout firms, and merchant banks. EJR may not sell, without paying a commission to IP, to any entity which resells the Service in whole or in part to the professional investment community during the exclusive period of this agreement.

EJR may sell, without paying a commission to IP, to individuals, public libraries, school libraries, corporate libraries or strategic planning departments, and in general to any entity which is not part of the professional investment community as defined and described above, provided however that IP has not already contacted that entity. EJR agrees to quote the same prices and to sell the Service to these entities, for the same prices that are contained in Exhibit I, attached, or subsequent modifications thereof, which must be agreed to by both parties. IP may also sell these and any other type of prospect and receive commissions as described in Exhibit II of this agreement.

IP acknowledges that EJR may attempt to become a recognized ratings agency. Nothing in this section is intended to prevent EJR from becoming or doing business as a ratings agency.

EJR has certain existing prospects which are listed in Exhibit III of this agreement. EJR may sell to these prospects without paying a commission to IP.

EJR acknowledges that IP, Insearch Partners, Steven Pruette and Christopher Pruette, individually do now, and will in the future represent and sell other research services to the professional investment community. IP represents that it does not presently represent any service which could be considered a competitor to EJR. IP agrees that it will not, while this agreement is in force represent a competing service, provided however that if a salesman or entity which already represents a competing service were to affiliate or combine with IP either by hire, partnership, joint venture, acquisition, merger or in the formation of another entity, IP or the resulting entity would not be forced by this Agreement to resign from either EJR or the competing service. IP warrants however that in the case described above that it would operate in such a way that representation of the competing service would not harm EJR of IP's ability to represent EJR. Should EJR feel that it's interests are being harmed by IP's representation of a competitor, EJR may notify IP of such harm; IP will have sixty days to remedy the situation after which time EJR will have a window of thirty days during which it may terminate the relationship. EJR agrees that this will be its sole remedy for any harm it feels may have been done by IP's representation of a competitor. EJR further agrees that such termination will be treated as EJR ending the relationship and that all renewal commissions on revenues from clients sold by IP up to the date of termination will be payable to IP for as long as the client remains a client as defined in Section 8 of this Agreement.

4. Control of Brokerage Commissions

IP has the right to place all brokerage commissions which result from sales by IP, to clients who wish to use brokerage commissions to pay for EJR Services. IP agrees however that no effort to place brokerage commissions can be made if it reduces the likelihood of a sale or interferes in any way with the primary purpose of selling subscriptions to the Service.

5. Pricing

Prices to be quoted by IP to prospective clients are according to Exhibit I attached. EJR has sole authority with regard to the pricing of the Service, provided however that the prices at which IP can sell the Service will be the only prices at which the Service will be sold to any client. Should other products or variations of the product become available, IP will also be able to sell those products or variations to its market as defined in paragraph 3, above, at the same prices that EJR sells those products or variations to any other prospect or client. EJR agrees to be diligent in assuring that the prices in Exhibit I are the only prices quoted by anyone at EJR, or representing EJR.

6. Sales Commission

IP will be paid a sales commission on new sales and renewal sales, according to Exhibit II which is attached and made part of this agreement. Commissions will be payable to IP immediately upon receipt by EJR of good funds from the client or the client's broker.

7. Existing Clients

Commissions will not be payable on sales to currently existing EJR clients unless EJR, on a case by case basis, authorizes IP to sell additional services and receive Commissions on incremental revenues to existing EJR clients. It is acknowledged, that IP's right to many of these preexisting clients has been established under a previous agreement.

8. Term and Renewal of Agreement

The term of this Agreement is two years from the date hereof unless extended by mutual agreement. Either party may end its association with the other with 90 days written notice after the end of the two year period, provided, however, that if total revenues to EJR from sales made by IP, pursuant to this Agreement, exceed $300,000 during the last twelve month period of the initial term of the Agreement, then IP will have the option to extend the term for a one year period. IP will have two additional options to renew the Agreement for one additional year each if total revenues to EJR exceeds $450,000 during the third twelve month period and $600,000 during the forth twelve month period after the date of this Agreement. Total Revenues are defined for the purposes of this agreement to be gross revenues paid to EJR from clients of the Service.

EJR will have unilateral opportunities to end the sole agent features of this agreement if total revenues to EJR do not exceed $75,000 in the first six months after signing this Agreement, or $150,000 in the first twelve months after signing this Agreement. EJR will have thirty (30) days after the end of the six or twelve month period to notify IP that it wishes to end the sole agent relationship of the Agreement. IP will then have thirty days in which to notify EJR whether or not it will continue to sell the EJR Service in a non-exclusive basis. If IP wishes to end the relationship, EJR will pay IP all commissions according to Exhibit II on all sales made up to the cancellation date. Renewal commissions will be paid to IP at the rates set out in Exhibit II on revenues from clients originally sold by IP for as long as the client remains an EJR client, the provisions of the final paragraph of this section notwithstanding.

If IP ends the association with EJR under this Agreement at any time after the initial term, renewal commissions will continue to be paid to IP at a rate one half (50%) of those set out in Exhibit II on renewals of revenue from clients originally sold by IP. Otherwise commissions will be paid at the rates set forth in Exhibit II for as long as the client remains an EJR client and regardless of whether IP is still active in selling the Service. A client will be deemed to have remained a client for the purposes of this agreement unless there has been an interruption of service to that client of at least thirteen months.

If IP ends the association before the end of the initial two year term of this agreement, for reason other than that described in the second paragraph of this section, IP will be entitled only to the commission on sales or renewals taking place before the cancellation.

9. Indemnification

EJR shall indemnify and hold IP harmless from any and all claims, judgements or liabilities (including reasonable attorney's fees) as a result of any action by a third party against EJR for any alleged infringements of any United States patent, copyright, trade secret or other proprietary rights arising out of the use or sale of EJR's products and services or related documentation, provided that IP promptly notifies EJR of any such action and gives EJR the sole authority and all reasonably available information and assistance necessary to defend or settle said action.

10. Confidentiality

The parties acknowledge that the terms of this Agreement are strictly confidential. The provisions of this Section 10 shall survive the termination of this Agreement.

11. Sales Material

EJR will provide IP with descriptive literature on its products and methodology, including multiple copies for distribution to prospects where appropriate. EJR will offer technical and sales support, primarily by telephone, to prospects as requested by IP. EJR will also allow and facilitate

limited trial subscriptions as requested by IP to qualified prospective clients who have expressed an interest in purchasing the service.

12. Delivery of the Product and Billing

It is understood that IP is not involved in the development of the product or delivery of the services, the invoicing of clients sold, or their designated brokers, or the collection of such invoice amounts; EJR accepts full responsibility for these functions.

13. Assignability of This Agreement

Neither this Agreement nor any rights and obligations hereunder shall be assigned or delegated by any party without the prior written consent of the other parties. However, the above notwithstanding, IP may assign the Agreement to an entity, the equity of which Steven Pruette or Christopher Pruette, directly or indirectly, own at least 50% and in which at least one of the individuals is active. Likewise, EJR may assign the Agreement to an entity, the equity of which Sean J. Egan, directly or indirectly, own at least 50% and remains active.

(and his spouse and children (Sean J. Egan

14. Approval of Sales Personnel

Any new sales personnel who will be representing the Service must be approved by EJR. IP need not obtain approval of EJR of personnel who might be hired to canvas by telephone and qualify prospects for a salesman.

15. Notices

Notices under this Agreement shall be in writing and be mailed by first class mail or delivered by hand, or by fax, effective upon receipt, addressed as follows:

if to EJR:

Mr. Sean Egan
Egan-Jones Ratings Company
257 East Lancaster Avenue
Suite #202
Wynnewood, PA 19096
Phone: 610-642-2411 FAX: 610-642-9184

if to IP:

Steven C. Pruette
Insearch Partners
5688 Glen Oak Court
Saline, MI 48176
Phone: 734-944-1941 FAX: 734-429-4293

Or to such other address as either party has notified the other party in accordance with this section.

16. Entire Agreement

(a) This Agreement constitutes the entire agreement between EJR and IP, and may not be changed except by a writing duly executed and delivered by EJR and IP in the same manner as this Agreement. This Agreement supercedes and cancels any and all prior agreements, whether written or oral, between EJR and IP.

(b) Whenever possible, each Section of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any Section is unenforceable or invalid under such law, such Section shall be ineffective only to the extent of such Section and the balance of this Agreement shall in such event continue to be binding and in full force and effect.

17. This Agreement shall be interpreted and enforced under the laws and in the Courts of the Commonwealth of Pennsylvania.

18. <u>Arbitration of Disputes</u>

ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH THEREOF, SHALL BE SETTLED BY ARBITRATION IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION, AND JUDGEMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) CAN BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. IF THE AMERICAN ARBITRATION ASSOCIATION IS NOT THEN IN EXISTENCE AND THERE IS NO SUCCESSOR, OR IF FOR ANY REASON THE AMERICAN ARBITRATION ASSOCIATION FAILS OR REFUSES TO ACT, THE ARBITRATION SHALL BE IN CONFORMITY WITH AND SUBJECT TO THE PROVISIONS OF APPLICABLE PENNSYLVANIA STATUTES (IF ANY) RELATING TO ARBITRATION AT THE TIME OF THE CLAIM. THE ARBITRATOR(S) SHALL BE BOUND BY THIS AGREEMENT AND ALL RELATED AGREEMENTS. THE COSTS AND EXPENSES OF THE ARBITRATION SHALL BE BORNE BY THE NON-PREVAILING PARTY OR PARTIES. IN MAKING ANY DETERMINATION HEREUNDER THE ARBITRATOR(S) SHALL BE BOUND BY PENNSYLVANIA LAW. ALL DETERMINATIONS MADE BY THE ARBITRATOR(S) SHALL BE FINAL, CONCLUSIVE AND BINDING ON ALL PARTIES HERETO.

For Insearch Partners:

Steven C. Pruette (signature) <u>December 20, 1998</u>

Steven C. Pruette, Partner

For Egan-Jones Ratings Company:

Sean J. Egan (signature) <u>December 20, 1998</u>

Sean J. Egan, Managing Director

## Exhibit I

**Pricing**

Annual Subscription          <Varies by client>

## Exhibit II

**Commissions**

35% of gross revenues received by EJR from new sales made by IP

30% on the first annual renewal of sales to users originally sold by IP

25% on the second annual renewal of sales to users originally sold by IP and all subsequent renewals for as long as the client remains a client, and regardless of whether IP was active in making the renewal.

## Exhibit III

**Clients and Prospects reserved by Egan-Jones Ratings Company**

Head Asset Management
Neuberger Berman
1838 Investment Advisors
Alliance Capital
Benham
Chesapeake Bay Advisors
Corestates Investment Advisors
Miller Anderson Sherrard
Miller Tabak
Rausher Pierce
South Dakota Investment Office
Williams Capital