IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER PRUETTE and STEVEN PRUETTE, trading as INSEARCH PARTNERS,<br><br>        Plaintiffs,<br><br>    v.<br><br>EGAN-JONES RATINGS COMPANY,<br><br>        Defendant. | CIVIL ACTION<br><br>No. 18-3734 |

MEMORANDUM OPINION

**SCHMEHL, J.  /S/  JLS**                                                                                     **MAY  9, 2024**

## I. INTRODUCTION

The instant matter is brought by Plaintiffs, Christopher Pruette and Steven Pruette, trading as InSearch Partners ("ISP") against Defendant, Egan Jones Ratings Company ("EJR"), seeking damages for breach of an oral contract that was allegedly entered into between the two parties in 2002. This Court previously entered summary judgment in favor of ISP as to liability, and ISP later filed the instant motion, seeking a grant of summary judgment as to damages only. In support of this motion, ISP offers the testimony of Christopher Pruette, and seeks damages in the form of lost commissions as well as damages for future lost commissions.

## II. PROCEDURAL HISTORY

ISP commenced an arbitration proceeding against EJR in January of 2015. The arbitration was bifurcated into separate liability and damages phases, and following a hearing, the arbitrator entered a "partial final" arbitral award finding that EJR was liable for having breached an exclusive distribution agreement entered into between the parties in 1998. EJR then

1

filed a petition in this Court pursuant to the Federal Arbitration Act to vacate this arbitral award. This Court found that it had jurisdiction over the "partial final" award and confirmed the arbitral award finding liability of behalf of EJR. This opinion was affirmed by the Third Circuit on September 25, 2018.

A second arbitration hearing was held on damages and an award was issued that determined the amount of damages to which ISP was entitled because of EJR's breach of the 1998 Agreement. This Court confirmed the damages award as issued by the arbitrator, then amended its ruling to confirm that the judgment included an amount separately awarded by the arbitrator as sanctions against EJR, and to impose prejudgment interest at a rate of 6 percent per annum. The judgment was appealed to the Third Circuit by EJR, but the parties settled their differences over the amount owed to ISP for breach of the 1998 Agreement during the pendency of the appeal.

The instant matter was initiated in 2018, after the arbitrator ruled that an oral contract between the two parties was not arbitrable. The oral contract at issue here involves a separate oral agreement, entered into in 2002 between ISP and EJR, adopting the provisions of the 1998 written agreement for ratings sales distribution for use in sales of proxy services. The Court previously denied EJR's motion for summary judgment and granted ISP's motion for partial summary judgment on liability issues, leaving the determination of the amount of damages to which ISP is entitled for later determination. Thereafter, ISP filed the instant motion, seeking summary judgment as to the amount of damages it claims to be owed from EJR due to its breach of the 2002 oral agreement. ISP claims that it is entitled to $3,062,962.08. In response, EJR claims ISP is entitled to only $87,124.

I first note that although it filed an opposition to ISP's Motion for Summary Judgment, EJR did not file a statement of material facts, nor present any conflicting facts to those set forth by ISP. For the reasons set forth below, I will grant Plaintiff's motion for summary judgment in part and deny it in part.

### III.   FACTUAL BACKGROUND

The relationship between the parties commenced in 1998, when Steven Pruette agreed in writing with Sean Egan that ISP would begin distributing EJR's ratings subscription service to potential customers active in financial services businesses on an exclusive basis. Four years later, the parties orally agreed that EJR would produce, and ISP would distribute, proxy services on the same basis as the ratings service. (C. Pruette Affidavit, Docket No. 60-2, ¶ 3.) In their dealings with each other, ISP and EJR utilized the same general methodology, regardless of whether ISP was selling ratings services or proxy services. (*Id.*, ¶ 10.) On a roughly monthly basis, commissions for completed sales would be dispersed to ISP in the form of a single check from EJR. (*Id.*) The amount of this check would equal the total value of all commissions on ratings services sales and proxy service sales completed within the relevant time. (*Id.*) The emails, accounts receivable reports and the aging reports relating to the parties' relationship commingled references to ratings services and proxy services. (*Id.*)

Eventually, EJR was granted a NRSRO (Nationally Recognized Statistical Rating Organization) license by the SEC. (*Id.*, ¶ 11.) As a condition to issuance of this license, the SEC required centralized invoicing with serialized invoice numbers. (*Id.*) Even using this new procedure, ratings and proxy service account records remained commingled. (*Id.*, ¶ 12.)

Christopher Pruette examined the documentation produced by EJR in discovery to perform a calculation of damages. Mr. Pruette worked with his father, Steven Pruette, as ISP,

distributing EJR products. Working with the controller at EJR, Pruette developed and standardized the accounting format and the scope of the individual reports that identified sales made by ISP. (Pruette report, Docket No. 60-3, p. 2.) Pruette also calculated the amounts of commissions earned by ISP on those sales, confirmed the amounts and nature of each payment received by EJR with the invoices that he sent out and recorded in the sales data. (*Id.*) Pruette also developed forms of spreadsheets aggregating and analyzing these data by date, by customer, and by the duration of the customer relationship. (*Id.*) Pruette states that as of 2014, EJR had never substantially changed these forms that he had developed. (*Id.*) Based upon the documentation produced by EJR in discovery in this matter, and relying on his knowledge of EJR's forms and accounting practices, Pruette developed a damages report. In that report, Pruette states that ISP's damages claim in this matter has two components: compensation for EJR's failure to have made contractually required commission payments, and compensation for EJR's destruction of ISP's business by improperly depriving it of all revenue. (Pruette report, p. 3.) Based upon his calculations, Pruette claims ISP is entitled to the following:

a. $1,391,524 in unpaid commissions from 2015 to the end of 2022 plus interest at six percent as of 12/31/2022. (Pruette affidavit, Docket No. 60-2, ¶¶ 16, 22, 23.)

b. $1,450,190 in present value of future commissions (*Id.*, ¶¶ 17, 18.)

c. $ 160,678 in concealed 2012-2014 Sales-based commissions for Broadridge plus interest (*Id.*, ¶¶ 19-21; Pruette Supp. Report, Docket No. 60-4, p. 1.)

IV. **LEGAL STANDARD**

On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted).  Summary

judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. US. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist*., 767 F.3d 247, 265 (3d Cir. 2014).

V.  **DISCUSSION**

In addressing ISP's motion for summary judgment, I first must decide if the relevant terms of the 2002 oral agreement mirror the terms of the 1998 written agreement. At the February 10, 2016, arbitration in this matter, Steven Pruette testified that ISP was the only distributor of EJR's proxy services, and that ISP sold EJR's proxy services "in a similar fashion" that ISP had sold all of EJR's products. (W. Bronner affidavit, Docket No. 60-1, p.2.) Steven Pruette also testified that the 2002 agreement to sell proxy services was not written, but that the parties "had an oral agreement that we would operate under the same agreement that we had for

credit research." (W. Bronner affidavit, p. 2.) Later in the same proceeding, the arbitrator requested a clarification of the terms of oral agreement, and Steven Pruette agreed that the 2002 verbal agreement required proxy services to be treated the same as the credit research agreement. (*Id.*)

Further, Christopher Pruette's affidavit in this matter stated that the oral contract, agreed upon in 2002, followed the form of the written contract entered into in 1998 and governed the sales of proxy services. (Pruette affidavit, ¶3.) Pruette also testified that in terms of the accounting process that was used, "the same general methodology would be utilized, regardless of whether ISP was selling a ratings service subscription or a proxy service." (*Id.*, ¶10.) Further, "the emails, the accounts receivables reports, and the aging reports constituting or accompanying these communications indiscriminatingly commingled references to ratings and proxy services." (*Id.*)

Also, I note that EJR submitted absolutely no evidence, nor does it argue, that the terms of the 2002 oral agreement did not mirror the terms of the 1998 written agreement. Accordingly, there is no genuine issue of material fact that the 2002 oral agreement contained the same terms as the 1998 written agreement. These terms include the same commission structure and the same exclusivity provision that made ISP the exclusive distributor of EJR's ratings service and proxy service. As I found in my September 29, 2021, Order on Plaintiffs' Motion for Partial Summary Judgment (Docket No 42), "if Plaintiffs [could] prove that the 2002 Agreement contains the same contractual language as the 1998 Agreement, Defendant shall not argue that its cessation of payments for commissions on sales of proxy services was not a breach of the proxy services distribution agreement nor shall it argue that appointing itself as the successor distributor of the proxy services in question was not a breach of the proxy services distribution agreement." As I

found above that ISP proved that the contractual terms of the 2002 agreement mirror the terms of the 1998 agreement, it is established that EJR breached the 2002 oral agreement by ceasing to pay commissions on sales of its proxy services[1]. Accordingly, all that is left is to determine the amount of damages to which ISP is entitled because of EJR's breach.[2]

To calculate the damages to which it is entitled, ISP submitted the report and supplement report of Christopher Pruette, as discussed above. ISP submits this report pursuant to Fed. R. Evid. 701, which allows a lay witness to testify regarding matters about which he or she is knowledgeable, so long as the witness does not submit an opinion that involves specialized knowledge within the scope of Fed. R. Evid. 702. Specifically, Rule 701 states as follows:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

ISP argues that the affidavit of Pruette which testifies about the contents of his report and supplemental report is appropriate under Rule 701 because ISP "relies directly on the data obtained from EJR, not on its own conclusions about the data." (ISP Brief, Docket No. 60-6, p. 12.) EJR opposes the use of Pruette's testimony under Rule 701, claiming that he is not entitled to provide opinion evidence on damages, that the submission of lay non-expert opinion

---

[1] I note that in its opposition to ISP's Motion, EJR states that it "concedes that under the terms of the 1998 Agreement, Plaintiffs may be entitled to commissions." (EJR Brief, Docket no. 64, p. 3.) EJR then claims these commissions are limited to sales by ISP prior to 2014 which customers remained clients of EJR after 2014 and calculates this amount at $87,140. (*Id.*)

[2] I also note that EJR brought a counterclaim against ISP in its initial pleading, claiming that Plaintiffs were overpaid some commission amounts. As of the date of this opinion, EJR has not argued that it is entitled to damages from ISP in this matter. Rather, as discussed above, EJR submitted an affidavit admitting that it owes ISP $87,140.

testimony under Rule 701 must be based on the witness's own perceptions, and that the "opinions offered by Pruette are not based on his own perceptions but upon review of EJR's records." (EJR Brief, Docket No. 62, p. 12.) EJR claims that although the Third Circuit has held that a lay opinion may be admissible based upon review of business records, the review of records must have been in a witness' corporate capacity, citing to *Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403-404 (3d Cir. 1980). However, a review of this case shows that it does not stand for the proposition for which EJR cited it. Rather, the Court in *Teen-Ed* stated that "[t]he modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *Teen-Ed., Inc. v. Kimball Int'l, Inc.* 620 F.3d at 403. That is exactly the situation set forth in the instant matter. EJR and ISP both created and maintained the records that Pruette later analyzed, and Pruette was the one initially tasked with the creation and maintenance of those records. Clearly, Pruette was intimately familiar with and had personal knowledge of the EJR records that he reviewed to author his report. Further, he was extensively cross-examined by EJR about his opinion, and EJR does not attempt to show any miscalculation or error in the Pruette report. I find Christopher Pruette is qualified to give lay opinion testimony regarding unpaid commissions and interest based upon his review of EJR records during this litigation.

In reviewing Pruette's report, supplemental report, and affidavit, he is seeking damages for unpaid 2015-2022 commissions, unpaid 2012-2014 Broadridge sales-based commissions that were concealed by EJR and future lost commissions. I will examine each type of damages in turn.

As to unpaid commissions from 2015 to 2022, I find ISP is entitled to the amount of $1,391,541.54 which represents unpaid commissions and interest, as calculated by Pruette after

his review of EJR records. ISP is also entitled to unpaid commissions for 2023 and interest, and upon calculation and submission to the Court by ISP, this additional amount will also be awarded. As to the amount ISP claims for the allegedly concealed Broadridge sales, I find ISP is entitled to an award of $160,678.17, as calculated by the Pruette report[3].

However, I do take issue with an award of future commissions to ISP as calculated by Pruette. In his affidavit claiming ISP's entitlement to such damages, Pruette states "I have acted in the belief that the proper measure of the value of the distribution business that EJR destroyed by nonpayment of commissions, in light of the contractual and other disincentives to termination, is equal to the present value of the reasonably anticipated future income stream, assuming payment of all future commissions at the contractual rates. As of 1/1/2023, the projected total sales revenue, and resulting commission revenue over the next 10 years, by extrapolation from the steady and predictable sales growth experience for a number of years, is $2,297.667." (Pruette affidavit, ¶17.)

I found Pruette had sufficient particularized knowledge of EJR's records to provide opinion testimony pursuant to Fed. R. Evid. 701(a) regarding unpaid commissions and interest. His particularized knowledge must, however, "provide a truly rational basis for his or her opinion" and that basis cannot stray into the realm of expert testimony. *See Asplundh Mgf. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Engineering*, 57 F.3d 1190, 1201 (3d Cir. 1995.) Subsection (c) was added to Rule 701 in 2000 to help clarify the distinction between lay and expert testimony to "eliminate the risk that the reliability requirements set forth in Rule 702

---

[3] I note that EJR fails to argue that these Broadridge sales did not occur, that they were not concealed or that payments for them were not withheld from ISP. Rather, EJR argues that the Pennsylvania statute of limitations of four years for fraud bars this claim. However, there is no genuine issue of material fact as to whether ISP acted diligently once it became aware of the concealment of the 2012-2015 Broadridge sales. Accordingly, this argument must fail.

9

will be evaded through the simple expedient of proffering an expert in lay witness clothing." See Notes to 2000 Amendments. While expert testimony "results from a process of reasoning which can be mastered only by specialists in the field," 701(c) demands that lay testimony be grounded on "process[es] of reasoning familiar in everyday life." Notes to 2000 Amendments (quotations and citations omitted); *see also United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) ("[I]n considering the third prerequisite for lay opinion testimony, a court must focus on the 'reasoning process' by which a witness reached his proffered opinion."). If the "rational basis" upon which a lay opinion is based would prove inaccessible to "a person of average intelligence," it will not qualify as lay testimony. *See United States v. Kale*, 445 Fed.Appx. 482, 485 (3d Cir. 2011); *see also Donlin v. Philips Lighting North America Corp.*, 581 F.3d 73, 82 (3d Cir. 2009)(finding "tasks such as calculating life-expectancy, assessing amortization rates... or calculating earnings potential in a pension portfolio" complex enough to require expert testimony). "Such technical testimony, though perhaps based upon a witness's particularized knowledge of a technical or specialized subject, nevertheless too closely resembles the sort of complex, hypothetical speculation characteristic of expert testimony." *Acosta v. Cent. Laundry, Inc.*, 273 F. Supp. 3d 553, 556–57 (E.D. Pa. 2017.)

      I find Pruette's calculation of the "distribution business that EJR destroyed by nonpayment of commissions" (Pruette affidavit, ¶ 17) is inadmissible as lay opinion testimony under Rule 701 (c), as the "rational basis" upon which his opinion on this issue is based is not accessible to "a person of average intelligence." See *United States v. Kale*, 445 Fed. Appx. At 485. Pruette's calculation of future commissions is technical, complex, and hypothetical, not a "process of reasoning based in everyday life." Pruette may have knowledge of the commission numbers from his familiarity with EJR's records, but the calculation he performs in his attempt

10

to calculate lost future commissions owed to ISP is properly the subject of expert testimony, as it is too complex to be left to lay opinion testimony. Accordingly, I find that there is a genuine issue of material fact as to the amounts to which ISP is entitled for future commissions.

## V.  CONCLUSION

For all the above reasons, ISP's motion for summary judgment is granted in part and denied in part. The motion is granted to the extent it seeks the amount of unpaid commissions from 2015 to 2022 plus interest as calculated by Pruette, unpaid commissions from January 1, 2023 to the date of this opinion, as well as the 2012-2014 concealed Broadridge commissions as set forth in Pruette's report. The motion is denied to the extent ISP seeks an award of damages for future commissions. If ISP wishes to claim future lost commissions from EJR, ISP must produce a qualified expert pursuant to Fed. R. Evid. 702. Further, if EJR intends to proceed with its counterclaim in this matter in light of this opinion, it must advise the Court of such in writing. An appropriate order follows.